IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DESABETINO II, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-341 |
| | ) | |
| v. | ) | |
| | ) | United States Magistrate Judge |
| OFFICER SEAN BIAGINI, OFFICER MICHAEL SNIDER, OFFICER JOHN SYMSEK, and OFFICER WILLIAM KELLY, | ) | Cynthia Reed Eddy |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM ORDER[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

This is a *pro se* civil rights action initiated under 42 U.S.C. § 1983 asserting an excessive force claim pursuant to the Fourth Amendment of the United States Constitution against the above-captioned Defendants arising out of the events leading up to Plaintiff Richard Desabetino II's arrest.[2] Plaintiff is presently being detained in the Allegheny County Jail. There are two pending motions before the Court: (1) Defendant Officer William Kelly's motion to dismiss for

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have voluntarily consented to have the undersigned conduct any all proceedings herein, which includes ruling on dispositive motions. (ECF Nos. 4, 31, 32, 33).

[2] The complaint also asserts that he is bringing a Fourteenth Amendment claim and "possibly" an Eighth Amendment claim. However, neither the Eighth Amendment nor the Fourteenth Amendment apply to excessive force claims arising out of the arrest of a free citizen. Graham v. Connor, 490 U.S. 386, 394 (1989) ("[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach" under the Fourteenth Amendment); see also Natale v. Camden Cty. Corr. Fac., 318 F.3d 575, 582 (3d Cir. 2003) (noting that the Eighth Amendment only applies to convicted prisoners). It is apparent from the facts alleged in the complaint that Plaintiff was a free citizen at all relevant times herein. Thus, he cannot pursue claims under the Eighth or Fourteenth Amendments, and our analysis will be limited to the Fourth Amendment.

failure to state a claim,[3] and (2) Plaintiff's motion for extension of time to file a response to said motion to dismiss. Upon review of Defendant Kelly's motion to dismiss, the Court concludes, as discussed more fully below, that it should be denied. As a result, Plaintiff's pending motion for extension of time to respond to this motion will be denied as moot.

The Federal Rules of Civil Procedure prescribe a notice pleading standard in which a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To satisfy this standard, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and also "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff need only allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of the claims. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). When analyzing a motion to dismiss, it is appropriate to separate the factual and legal elements of the claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. Id. at 210-11; see also Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) ("[T]he court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotation and citation omitted). Our Court of Appeals recently reiterated that at this step, allegations of historical fact, even ones that are "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful," are entitled to the assumption of truth. Connelly, 809 F.3d at 789 (quoting Iqbal, 556 U.S at 681). "Put another way, *Twombly* and *Iqbal* expressly declined to

---

[3] All of the other above-captioned Defendants have filed Answers. (ECF Nos. 15, 18).

exclude even outlandish allegations from a presumption of truth except to the extent they resembled a 'formulaic recitation of the elements of a … claim' or other legal conclusion.'" Id. Finally, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.[4]

With this standard in mind, the complaint alleges the following facts, which we are restrained to accept as true at this stage, notwithstanding their fantastical nature. On August 6, 2014, Officer Biagini arrived at Plaintiff's residence in Baldwin, Pennsylvania with an arrest warrant for purposes of arresting Plaintiff's then-girlfriend. Plaintiff was asked to present identification, at which point he exited the house, with the couple's seven-month old daughter in his hands, to obtain his identification from his vehicle. Officer Biagini followed Plaintiff to the vehicle and attempted to stop Plaintiff from entering it. In doing so, Officer Biagini used force against Plaintiff, so Plaintiff placed his daughter on the ground next to his girlfriend. Plaintiff proceeded to enter the vehicle to obtain his identification. As this was happening, Officer Snider arrived on the scene.

Plaintiff alleges that he was in fear for his, as well as his daughter's, safety at this point, as the officers were assaulting him. After struggling from being assaulted by the officers, he was able to enter the vehicle. Officer Snider backed away from the vehicle, while Officer Biagini

---

[4] Moreover, pleadings filed by *pro se* litigants are held to a less stringent standard than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106(1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, if the court can reasonably read a *pro se* pleading to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

continued assaulting Plaintiff "from inside the drivers (*sic*) side compartment door." Plaintiff started the vehicle and reversed it several feet, and then placed it in park. As Plaintiff did this, Officer Biagini lost his balance and fell to the ground, causing him to hit his head and suffer a "minor injury."

Officer Snider positioned himself at the front of Plaintiff's vehicle, drew his firearm, and shot directly at Plaintiff's head. The bullet traveled through the vehicle's windshield, grazed Plaintiff's head, and exited through the back of the vehicle. Plaintiff was in fear for his safety and life, so he attempted to carefully exit the area without harming Officer Snider, however, his vehicle may have "slightly grazed" Officer Snider's arm. As Plaintiff drove away for his safety, Officer Snider fired a second shot at Plaintiff's vehicle, which entered the vehicle's gas tank.

As a result of the gas tank being shot, Plaintiff had to stop his vehicle in nearby South Park, Pennsylvania. Plaintiff was still in fear for his life at this point, and also "suffered a mental blackout and apparently stole a car form a driveway in Grandview place." He then attempted to drive to a relative's house to "have them report what had occurred."

Officer John Symsek heard a call over the police radio stating that there had been an officer involved in a shooting in Baldwin, and that the suspect fled to South Park. Officer Symsek also heard another call on the radio which stated that a green Oldsmobile Cutlass had just been stolen from Grandview Place and was heading in the direction of Grandview Farms housing complex. Officer Symsek then observed a vehicle matching this description, and Plaintiff was inside of it. Officer Symsek immediately fired ten shots at this vehicle with a rifle. These shots caused damage to the vehicle, but he was "able to exscape (*sic*) one more time without further injury at this point."[5]

---

[5] Two other non-Defendant police officers fired shots at this vehicle in response to the gunshots fired by Officer Symsek.

Still driving the vehicle, Plaintiff proceeded towards the home of his relative, with numerous police vehicles chasing behind him. While crossing through an intersection, Plaintiff struck two non-police vehicles: a pickup truck and a white Chevrolet HHR. Plaintiff exited his vehicle and proceeded to run for his life and safety, however, while doing so, he was attacked by the driver of the white Chevrolet HHR. Plaintiff continued to try to run away from the scene in fear. Officer Kelly observed Plaintiff struggling with the owner of that vehicle, and when Plaintiff was able to break free from that individual, Officer Kelly shot Plaintiff in the back. Notwithstanding being shot, Plaintiff "was able to enter the [white Chevrolet HHR] out of fear," and drive away from the scene, at which time Officer Kelly fired a second shot at Plaintiff.

Plaintiff then drove to the Grandview Farms Complex, however, because he was seriously wounded, he slowed down the vehicle, fell out of it, and surrendered. He was arrested and taken to the hospital in critical condition. Plaintiff was criminally charged on several counts, including eluding police, aggravated assault, robbery of a motor vehicle, simple assault, reckless endangerment, and being in an accident without a license. Plaintiff claims that during all of the above events, he never had a weapon or used his vehicle as a weapon, and that deadly force was unreasonable.

In his motion to dismiss, Officer Kelly contends that his use of force was objectively reasonable under the circumstances, and thus, he did not violate Plaintiff's rights under the Fourth Amendment. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (citation omitted). Officer Kelly does not dispute that a seizure has been alleged. See also Curley v. Klem, 499 F.3d 199, 203 n. 4 (3d Cir. 2007) ("[T]here is 'no question' that a shooting constitutes a seizure under the

Fourth Amendment.") (citing Tennessee v. Garner, 471 U.S. 1, 7 (1985)). Thus, the only issue for the Court to decide is whether Plaintiff has alleged that Officer Kelly's conduct was unreasonable.

In making this determination, Officer Kelly's actions are assessed under an objective standard "without regard to [his] underlying intent or motivation." See Graham v. Connor, 490 U.S. 386, 397 (1989). "Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004). "A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of affecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. at 777. "Reasonableness under the Fourth Amendment should frequently remain a question for the jury; however, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Id. (internal citation and marks omitted).

Officer Kelly maintains that his use of deadly force – shooting Plaintiff in the back – was reasonable under the circumstances, as Plaintiff posed an immediate danger to the officers and the public. However, this argument is better suited for summary judgment once the factual record is developed. Indeed, while it seems almost certain that, at least with respect to Officer Kelly, Plaintiff has carefully twisted many of the underlying facts in his own favor such that they are "unrealistic or nonsensical," "chimerical," "extravagantly fanciful," and "even outlandish,"

we must nevertheless assume, at this stage, that they are true. See Connelly, 809 F.3d at 789. As such, we must credit as true Plaintiff's allegations that he was not posing a risk to the officers or the public when Officer Kelly shot him in the back; that is, just moments after Plaintiff was able to break free from being assaulted by the driver of the white Chevrolet.

Accordingly, when drawing all reasonable inferences in a light most favorable to Plaintiff and assuming that the events in the complaint occurred as Plaintiff alleges they did, the Court concludes that Plaintiff has stated a Fourth Amendment claim against Officer Kelly. In turn, it is premature to conclude that Officer Kelly is entitled to qualified immunity at this stage, as this issue also turns on the underlying factual circumstances which must be developed.[6] See Newland v. Reehorst, 328 Fed. App'x 788, 791 n. 3 (3d Cir. 2009) ("We caution … that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."); Zion v. Nassan, 727 F.Supp.2d 388, 402 (W.D. Pa. 2010); Williams v. Papi, 30 F.Supp.3d 306, 314 (M.D. Pa. 2014). But, at the close of discovery, Officer Kelly is welcome to file a motion for summary judgment, at which time the Court will not be obligated to adopt Plaintiff's extravagantly fanciful version of the events, to the extent that it is contradicted by the record as a whole. See Scott v. Harris, 550 U.S. 372, 381 (2007).

In conclusion, Officer Kelly's motion to dismiss (ECF No. 21) is denied, and consequently, Plaintiff's motion for extension of time to file a response to said motion (ECF No. 38) is denied as moot. A case management order will be entered separately.

---

[6] The Court notes that the cases cited by Officer Kelly in favor of qualified immunity were at a different procedural posture. See Brosseau v. Haugen, 543 U.S. 194 (2004) (summary judgment phase); Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (motion for judgment as a matter of law after the plaintiff had presented his evidence at trial). Thus, these cases are distinguishable at the moment, but will be relevant after the factual record is developed. See also Plumhoff v. Rickard, 134 S. Ct. 2012, 2023-24 (2014) (decided less than three months prior to this inicent).

**SO ORDERED**, this 12th day of September, 2016.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF

**RICHARD DESABETINO**
86050
950 2nd Ave.
Pittsburgh, PA 15219