IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

RICHARD DESABETINO,           )
           )
           )     2:16-CV-00341-CRE
     Plaintiff,     )
           )
   vs.          )
           )
OFFICER SEAN BIAGINI, OFFICER   )
MICHAEL SNIDER, OFFICER JOHN   )
SYMSEK, OFFICER WILLIAM KELLY,   )
           )
     Defendants,     )
           )

## MEMORANDUM OPINION[1]

Cynthia Reed Eddy, Chief United States Magistrate Judge.

This civil action was initiated *pro se* in this court on March 24, 2016, by Plaintiff Richard DeSabetino, to recover damages against four police officers, Defendants Sean Biagini, Michael Snider, John Symsek, and William Kelly.  Plaintiff claims that these police officers violated his civil rights pursuant to 42 U.S.C. § 1983, for their purported use of excessive force during the course of an arrest. *See* Compl. (ECF No. 3). This court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. § 1331.

Presently before the court are motions for summary judgment by all defendants filed pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 99, 102, and 106)  For the reasons that

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment.  (ECF Nos. 31-33).

follow, this court grants the motions for summary judgment, and this case is dismissed with prejudice.

I.    **BACKGROUND**

The underlying facts of this matter are generally undisputed.  On August 6, 2014, Officer Sean Biagini of the Baldwin Borough Police Department learned of arrest warrants for Plaintiff and his girlfriend, Amy Calabrese, related to theft of bicycles. Concise Statement of Undisputed Material Facts filed by Defendants Biagini and Snider ("CSF") (ECF No. 107) at ¶ 3.  Officer Biagini, being familiar with Calabrese and knowing that she often stayed at a home in Baldwin Borough, went to that home where he saw her through a window. *Id*. at ¶¶ 5, 8.  He requested backup and went to the rear of the house, where he observed bicycles. *Id*. at ¶¶ 9-10.  Calabrese and her baby came out of the house, and Officer Biagini told Calabrese he had a warrant for her arrest. *Id*. at ¶ 11.

Calabrese went back into the house and then she and Plaintiff, who was holding the baby in a carrier, came back out of the house. *Id*. at ¶¶ 12-13. Not being positive of Plaintiff's identity, Officer Biagini asked Plaintiff for identification. *Id*. at ¶ 15. Plaintiff responded by telling Officer Biagini that his identification was in his car, and he began walking toward a parked Yukon Denali.[2] *Id*. at ¶ 16. Plaintiff placed the baby carrier down and opened the door to the vehicle, and Officer Biagini attempted to stop Plaintiff from getting into the vehicle by trying shut the vehicle door on Plaintiff.[3]  *Id*. at ¶¶ 17, 20.

---

[2] Officer Biagini saw the Denali when he approached the house, and he ran the license plate number on it, where he learned that it appeared to be owned by Calabrese. *See* Biagini's Testimony (ECF No. 108-2) at 5.

[3] In his brief in this matter, Plaintiff claims that he did not know there was a warrant for his arrest, and he believed he was free to leave. Pl.'s Br. (ECF No. 112) at 4.  However, at his criminal trial related to this incident, Plaintiff testified that Officer Biagini said to Plaintiff, "If you're Rich….If

Officer Michael Snider arrived on the scene, and both officers engaged in a struggle with Plaintiff around the driver's side window. *Id*. at ¶¶ 21-22. Specifically, both officers were trying to pull Plaintiff out of the vehicle.  Despite Officer Biagini's efforts to prevent Plaintiff from starting the vehicle, Plaintiff was able to turn on the vehicle.  Officer Snider eventually ended up standing directly in front of the vehicle. Officer Snider heard the engine rev and believed Plaintiff was accelerating toward him; Officer Snider then shot directly at the vehicle. *Id*. at ¶ 32.  At the same time, Officer Biagini jumped back from the vehicle and fell backwards hitting his head on the ground and becoming unconscious. *Id*. at ¶¶ 38-39.  Once Officer Snider saw that Officer Biagini was away from the vehicle, Officer Snider fired again, hitting the vehicle's gas tank. *Id*. at ¶¶ 40-41. The Denali then drove out of sight, and Officer Snider radioed a general description of the vehicle, including the fact that the vehicle had a window shot out, and the direction the vehicle was heading. *Id*. at ¶¶ 43-44.

Plaintiff eventually parked the Denali in South Park Township. Concise Statement of Material Facts filed by Officer Symsek (ECF No. 104) at ¶ 9.  Plaintiff then claims he "suffered a mental blackout" prior to stealing a green Oldsmobile Cutlass from Grandview Place. *Id*. at ¶ 10. Meanwhile, "Officer John Symsek received information over the police radio that there had been an officer-involved-shooting in Baldwin Borough and the suspect fled to South Park." *Id*. at ¶ 11. "Another call was received that a green Oldsmobile Cutlass had just been stolen from Grandview Place and was headed in the direction of Grandview Farms Housing Complex." *Id*. at ¶ 12.

---

you have a warrant, we can work this out. Listen.  Just tell me what your name is.  We can work this out if you have a warrant." Trial Transcript (ECF No. 108-2) at 37.  Plaintiff responded to Officer Biagini, "Well, you know I have a warrant. Why don't you place me under arrest?" *Id*. Based on the foregoing, this court concludes that Plaintiff was indeed aware that there was a warrant for his arrest at the time he entered the vehicle.

Officer Symsek saw a vehicle matching a description of the Cutlass. *Id*. at ¶ 13. Officer Symsek "immediately opened fire 10 times at the Plaintiff's vehicle with his patrol rifle." *Id*. at ¶ 14. Despite damage to the vehicle, Plaintiff continued driving with numerous police vehicles following. *Id*. at ¶ 17. At the intersection of Higbee and Baptist Roads, "Plaintiff struck a pickup struck and also struck a white Chevrolet H.H.R." *Id*. at ¶ 18. Officer Kelly witnessed this crash "and then saw Plaintiff forcibly remove somebody from a Chevy." Concise Statement of Material Facts filed by Officer William Kelly (ECF No. 100) at ¶ 14. As Plaintiff started to drive away in the stolen Chevrolet, Officer Kelly fired twice on Plaintiff, hitting him once in the back. Plaintiff then ended his flight and surrendered.

As a result of this incident, Plaintiff was criminally charged in Allegheny County with, *inter alia*, aggravated assault and recklessly endangering another person ("REAP"). Specifically, he was charged with aggravated assault with respect to Officers Biagini, Snider, and Symsek. Additionally, Plaintiff filed the instant lawsuit against the officers, asserting violations of his rights pursuant to section 1983. This matter was stayed pending the outcome of Plaintiff's criminal trial.

On May 22, 2019, Plaintiff was convicted of numerous crimes related to the aforementioned incident. Relevantly, Plaintiff was found guilty of aggravated assault and REAP with respect to Officers Biagini and Snider, and not guilty of aggravated assault with respect to Officer Symsek. On June 27, 2019, Plaintiff was sentenced to an aggregate term of 20 years and 8 months to 50 years of incarceration.

This court then lifted the stay in this case and issued a case management order. After discovery, on January 16 and 17, 2020, all four defendants filed motions for summary judgment, briefs in support thereof, and concise statements of material facts. (ECF Nos. 99-109). Plaintiff filed responses. (ECF Nos. 113-115). The matter is now ripe for disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New*

*Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

## III.   DISCUSSION

### A.   Officers Biagini and Snider – The Heck Doctrine

Officers Biagini and Snider first claim that summary judgment should be granted in their favor pursuant to the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994) ("the *Heck* Doctrine"). *See* Pls.' Br. (ECF No. 109) at 7-12.  Pursuant to the *Heck* Doctrine, "[w]hen a plaintiff is convicted of a criminal offense in state court, the federal court must determine whether a finding in favor of the plaintiff in federal court necessarily implies the invalidity of his prior conviction in state court by comparing the elements of the state offense with the plaintiff's § 1983 claim … and examining which questions were put before the jury in the criminal action." *Weber v. Rodriguez*, 2011 WL 2555358, at *3 (D.N.J. 2011) (internal citations omitted).

Here, the officers contend that Plaintiff's criminal convictions for aggravated assault and REAP preclude his section 1983 claim that the officers used excessive force, because Plaintiff was found guilty of either inflicting or attempting to inflict bodily injury on the officers. *See* Defs.' Br. (ECF No. 109) at 7-12.  In considering this issue, this court notes that the Third Circuit follows the majority of other circuits in concluding that a conviction for assaulting a police officer in connection with the incident giving rise to the section 1983 claim does not automatically preclude that claim. *See Garrison v. Porch*, 376 F. App'x 274, 278 (3d Cir. 2010).  Instead, the Third Circuit sets forth the guiding principle "taken from Restatement (Second) of Torts § 133 (1965): 'If the

6

means employed by the actor for the purpose of effecting the arrest or recapture of another, or of maintaining the actor's custody of him, are in excess of those which he is privileged to use ... the actor is liable for only so much of the force as is excessive.'" *Nelson v. Jashurek*, 109 F.3d 142, 146 (3d Cir. 1997).

According to Plaintiff, Officer Biagini utilized excessive force "by slamming [Plaintiff's vehicle's] door on [Plaintiff] with his seven month old daughter right there, while Plaintiff tried to retrieve his identification for [Officer Biagini]." Pl.'s Br. (ECF No. 112) at ¶ c.  With respect to both officers, Plaintiff claims that Officers Snider and Biagini utilized excessive force when they physically assaulted Plaintiff in an attempt to remove Plaintiff from the vehicle.  Finally, with respect to Officer Snider, Plaintiff claims Officer Snider used excessive force when he fired two gunshots at Plaintiff. *Id.* at ¶¶ f, g.

In considering the record before this court, it is not clear whether Plaintiff's aggravated assault and REAP convictions were for Plaintiff's actions during the struggle with Officers Biagini and Snider, for Plaintiff's actions in attempting to use the Denali to injure the officers, or for both. Thus, it is not appropriate for this court to grant summary judgment on the basis of the *Heck* Doctrine, as this court cannot determine with certainty "whether a finding in favor of the plaintiff in federal court necessarily implies the invalidity of his prior conviction in state court." *Weber*, 2011 WL 2555358, at *3.

In reaching this conclusion, this court finds *Roberts v. Niebel*, 2015 WL 70993, at *6 (E.D. Pa. 2015), instructive.  In *Roberts*, the plaintiff was thrown out of a bar for being highly intoxicated, got into his vehicle, and drove away.  A bouncer at the bar informed police of the plaintiff's condition, and Officer Hutchinson began following the plaintiff's vehicle and attempted to initiate a traffic stop.  The plaintiff initially stopped his vehicle, but then drove away and Officer

Hutchinson began a pursuit.  Four other officers continued the pursuit, and the plaintiff did not stop his vehicle, but drove it into a residential backyard where the plaintiff ended up stuck in a flower bed.  Two officers exited their vehicles and withdrew with guns.  The plaintiff revved his engine to free his vehicle from the flower bed, and once freed, the plaintiff drove the vehicle directly at the officers.  The two officers fired shots at the vehicle.

Additional officers joined the chase of the vehicle, and fired shots at the vehicle.  Specifically, Officer Kennedy "saw the [plaintiff's] vehicle coming towards him, and fearing that he would be run over, he jumped up, and landed on the hood of the [plaintiff's] vehicle." *Id*. at *3.  "Fearing for his life, Officer Kennedy fired shots through the windshield of the [plaintiff's] vehicle.  Officer Kennedy then jumped from the hood of the [plaintiff's] vehicle, and fired additional shots at the driver's side of the vehicle as it continued to drive away." *Id*.  Eventually, the plaintiff's vehicle got stuck in a chicken coop, and just as he had previously, the plaintiff revved his engine to free his vehicle while surrounded by additional officers.  Those officers also fired shots at the vehicle, and eventually, the plaintiff was shot and was pulled from the vehicle.

In connection with this incident, the plaintiff pleaded guilty to, *inter alia*, aggravated assault of a police officer and REAP.  Plaintiff specifically set forth as the basis for his plea that "he knowingly caused bodily injury to Officer Kennedy when [he] failed to stop [his] car and hit him." *Id*. at *4. In concluding that the defendant officers were not entitled to summary judgment on the plaintiff's section 1983 excessive force claim, the district court concluded that "it is possible that [d]efendants in this matter reacted to [the plaintiff's] illegal conduct with excessive force.  Because [the plaintiff's] conviction in state court is not inconsistent with a finding that [d]efendants used excessive force to arrest him, *Heck* does not bar [the plaintiff's] § 1983 claim."

*Id*. at *6.  Accordingly, the district court denied the defendant officers' motion for summary judgment.

Similarly, based on the conduct for which Plaintiff is claiming was excessive force in this matter, it is conceivable that Officers Biagini and Snider reacted to Plaintiff's conduct with excessive force.  Accordingly, as in *Roberts*, this court declines to grant summary judgment to Officers Biagini and Snider on basis of the *Heck* Doctrine.  Instead, this court will examine whether the use of force was excessive under the circumstances.

### B.  Excessive Force, the Fourth Amendment, and Qualified Immunity

Plaintiff is claiming that all four officers used excessive force against him in violation of his civil rights pursuant to 42 U.S.C. § 1983. *See* Compl. (ECF No. 3). "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 405 (E.D. Pa. 2019) (quoting 42 U.S.C. § 1983). "To state a claim under section 1983, a plaintiff must demonstrate that some person has deprived him of a federal right...[and] that the person who has deprived him of that right acted under color of state or territorial law." *Id*. (internal citations and quotation marks omitted).  It is well settled that all "claims that law enforcement officers have used excessive force ... in the course of an arrest ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[4] *Damiani v. Duffy*, 754 F. App'x 142, 146 (3d Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

---

[4] In his complaint, Plaintiff claims violations of his Fourth, Eighth, and Fourteenth Amendment rights due to the officers' use of excessive force.  However, as cited *supra*, this court will only consider an excessive force claim pursuant to the Fourth Amendment; summary judgment is granted defendants for Plaintiff's claims for relief pursuant to the Eighth and Fourteenth Amendments. *See also Brice v. City of York*, 528 F. Supp. 2d 504, 515 (M.D. Pa. 2007) ("A plaintiff seeking recovery for police conduct during the course of an arrest must predicate recovery upon the Fourth Amendment.").

> Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  An analysis of the reasonableness of an officer's actions requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*. at 146-47 (internal citations and quotation marks omitted).  "In evaluating excessive force claims, courts must adopt an officer's on the scene perspective." *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 804 (D.N.J. 2008) (internal quotation marks omitted).

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Ference*, 538 F. Supp. 2d at 804 (quoting *Graham*, 490 U.S. at 396-97(citations omitted)) (internal quotation marks omitted).  Moreover, in considering excessive force claims, this court notes that this circuit has held that "the presence or absence of physical injury is probative evidence of whether the force used was excessive." *Velius v. Twp. of Hamilton*, 754 F. Supp. 2d 689, 694 (D.N.J. 2010).

However, even where a constitutional violation occurs, a police officer may still be entitled to avoid liability pursuant to the doctrine of qualified immunity. "Qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Guthrie v. Guthrie*, 216 F. Supp. 3d 590, 594 (W.D. Pa. 2016). "It applies to give officers breathing room to make reasonable but mistaken judgment." *Id*. (internal quotation marks omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or

10

those who knowingly violate the law." *Id*. "Summary judgment based on qualified immunity should be granted when the law did not put the officer on notice that his conduct would be clearly unlawful." *Id*. at 594-95 (internal quotation marks omitted).

Considering the aforementioned standards, this court will evaluate the various arguments set forth in relation to each officer.

### a.  Officer Biagini

According to Plaintiff, Officer Biagini "used excessive force on Plaintiff by slamming his vehicle['s] door on him with his seven month old daughter right there." Pl.'s Br. (ECF No. 112) at 4.  Plaintiff also argues that Officer Biagini physically assaulted Plaintiff. *Id*. at 5.  In response, Officer Biagini points out that there is no evidence that he "discharged his own weapon or even pointed it at Plaintiff." Def.'s Br. (ECF No. 109) at 14.  Additionally, although Plaintiff and Officer Biagini "fought," it is Officer Biagini's contention that "there are no facts of record to suggest that Plaintiff sustained any injury as a result of Officer Biagini's use of force." *Id*.

Instantly, Officer Biagini had a valid warrant for Plaintiff's arrest, and was requesting identification to ensure that the individual who Officer Biagini believed to be Plaintiff was indeed Plaintiff.  In an effort to comply with Officer Biagini's request, Plaintiff tried to enter the Denali. On the other hand, believing Plaintiff was trying to flee, Officer Biagini attempted to prevent Plaintiff from entering the Denali, which resulted in a mutual struggle.  Plaintiff does not claim that Officer Biagini brandished his weapon or threatened Plaintiff in any way.  In addition, Plaintiff has asserted no injuries from Officer Biagini's actions.

Viewing this record in the light most favorable to Plaintiff, but from the point of view of Officer Biagini's on-the-scene perspective, it was not objectively unreasonable for Officer Biagini to be concerned about Plaintiff fleeing.  Specifically, Plaintiff was aware there was a warrant for

his arrest and he tried to get into the driver's seat of a vehicle.  Moreover, the actions taken by

Officer Biagini, attempting to close the vehicle door and engaging in a mutual struggle, were not

excessive in light of these circumstances.  This court recognizes that under some circumstances,

even minimal force can be excessive if there was little or no justification for the seizure. *See Price*

*v. City of Philadelphia*, 239 F. Supp. 3d 876, 892 (E.D. Pa. 2017) (holding a genuine issue of

material fact existed to preclude summary judgment as to an officer's minimal use of excessive

force on a plaintiff where the officer approached plaintiff, who was engaged in a non-physical,

verbal dispute with another individual, and the officer slammed the plaintiff against a car when the

plaintiff turned around to walk away when the officer approached).  However, in the instant case,

Officer Biagini possessed a valid warrant for the arrest of Plaintiff.  Officer Biagini's minimal

force in an attempt to prevent Plaintiff from getting into the driver's seat of a vehicle was

objectively reasonable under the circumstances.  Based on the foregoing, this court concludes that

Officer Biagini's use of force falls below the threshold for being excessive under these

circumstances, and summary judgment is granted in favor of Officer Biagini.[5]

      *b.   Officer Snider*

According to Plaintiff, Officer Snider utilized excessive force when he physically assaulted

Plaintiff along with Officer Biagini, and when Officer Snider fired two gunshots at Plaintiff. Pl.'s

---

[5] Even if the force used against Plaintiff was indeed excessive, Officer Biagini would be entitled
to qualified immunity.  For Officer Biagini not to be entitled to qualified immunity, he would have
had to violate clearly established law. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (pointing out
that qualified immunity operates to "protect officers from the sometimes hazy border between
excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on
notice their conduct is unlawful") (internal quotation marks omitted). Plaintiff has not suggested,
nor has this court found, any law that would prevent an officer from trying to stop an individual
for whom the officer has a valid arrest warrant from attempting to flee.  Thus, Officer Biagini's
actions did not violate clearly established law, and he is entitled to qualified immunity.

Br. (ECF No. 112) at ¶¶ f, g.  Officer Snider responds that his use of force was reasonable under these circumstances. Defs.' Br. (ECF No. 109) at 18-19.

First, in evaluating whether Officer Snider's use of force in the struggle with Plaintiff was reasonable, this court must consider the events from Officer Snider's perspective.  Officer Biagini had called Officer Snider for backup, and when Officer Snider arrived at the scene, he saw Officer Biagini engaged in a struggle with Plaintiff.  Thus, from the facts, as viewed from Officer Snider's on-the-scene perspective, it was reasonable for Officer Snider to come to the aid of Officer Biagini. Furthermore, Plaintiff points to no specific form of excessive force actually utilized by Officer Snider in relationship to this struggle.  Plaintiff does not refer to a punch, a kick, or any instance where Plaintiff suffered an injury.  Based on the foregoing, this court concludes that Officer Snider is entitled to summary judgment with respect to Plaintiff's excessive force claim as to the struggle.

This court now must consider whether Officer Snider's firing his weapon at Plaintiff amounted to excessive force under these circumstances.  In considering this issue, this court looks to whether "it is unreasonable for an officer to seize an unarmed, nondangerous suspect by shooting him dead.  **But [w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force**." *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004) (internal citations and quotation marks omitted) (emphasis added); *see also Thompson v. Howard*, 679 F. App'x 177, 181 (3d Cir. 2017) ("An officer's use of deadly force is excessive when it is not objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others.") (internal quotation marks omitted).

Instantly, while Officer Biagini was still attached to Plaintiff vehicle, Plaintiff was able to turn on the vehicle and it began to move.  Fearing for Officer Biagini's safety, as well as his own, it was reasonable for Officer Snider to discharge his weapon to prevent injury to himself, Officer Biagini, and attempt to prevent Plaintiff from fleeing. *See Roberts*, 2015 WL 70993, at *10.  Based on the foregoing, this court grants summary judgment in favor of Officer Snider.[6]

       *c.  Officers Symsek and Kelly*

Plaintiff contends that Officer Symsek utilized excessive force when he fired ten shots at Plaintiff's vehicle. Pl.'s Br. (ECF No. 115) at 4.  Plaintiff also argues that Officer Kelly's shooting Plaintiff was excessive because Officer Kelly could have used his taser on Plaintiff. Pl.'s Br. (ECF No. 113) at 4.

Officer Symsek responds that his use of deadly force was reasonable under the circumstances, where he was aware that Plaintiff was involved in injuring another officer, had stolen a vehicle, and was fleeing. *See* Symsek's Br. (ECF No. 103) at 8-9.  Similarly, Officer Kelly responds that he acted reasonably under the circumstances where he used deadly force to "to make a split-second decision when he came upon a suspect of an incident with an officer down and shots fired, that was involved in police vehicle chases one of which resulted in an accident and he was witnessing the same individual in the commission of another violent crime." Kelly's Br. (ECF No. 101) at 7 (internal citations omitted). Alternatively, both Officers Symsek and Kelly claim that even if they did use excessive force, they are entitled to qualified immunity. Symsek's Br. (ECF No. 103) at 10-12; Kelly's Br. (ECF No. 101) at 10-12.

---

[6] Moreover, even if the force used in this instance was excessive, Officer Snider is entitled to qualified immunity.  "[S]everal cases have held that the use of lethal force is permissible to stop a fleeing motorist who poses an actual and imminent threat to others." *Roberts*, 2015 WL 70993, at *14.  In this case, both Officers Biagini and Snider were in imminent danger and Plaintiff was attempting to flee.  Thus, Officer Snider's use of force did not violate any clearly established law.

In considering these officers' use of deadly force, this court looks to the United States Supreme Court's decision in *Plumhoff v. Rickard*, 572 U.S. 765 (2014). In *Plumhoff*, police officers pulled over the plaintiff for driving at night with only one working headlight. Because the plaintiff was unable to produce a driver's license, police asked him to step out of the car, and the plaintiff drove away. A chase involving several police cars ensued, and eventually the plaintiff's vehicle became entrapped by a police vehicle. Officers approached the plaintiff's vehicle and fired three shots. The plaintiff then was able to maneuver his vehicle around the officers' vehicles, and the plaintiff continued his flight. Two officers fired a total of 12 more shots at plaintiff during that second leg of the flight. The plaintiff then lost control of his vehicle and crashed, and both the plaintiff and his passenger died from their injuries. The plaintiff's surviving daughter filed a section 1983 action, claiming, *inter alia*, the officers used excessive force. The Supreme Court considered two separate Fourth Amendment issues. "First, [the plaintiff] contends that the Fourth Amendment did not allow [the officers] to use deadly force to terminate the chase. Second, [the plaintiff] argues that the degree of force was excessive, that is, that even if the officers were permitted to fire their weapons, they went too far when they fired as many rounds as they did." *Plumhoff*, 572 U.S. at 775 (internal citations and quotation marks omitted). In concluding that the officers did not utilize excessive force, the Supreme Court considered the fact that the plaintiff led police cars on a high speed chase for several minutes, and even after coming to a stop, the chase continued. The Court held that "it is beyond serious dispute that [the plaintiff's] flight posed a grave public safety risk, and … the police acted reasonably in using deadly force to end that risk. *Id*. at 777. The Court then considered the plaintiff's argument that the number of shots fired was excessive, and rejected that argument, concluding that "[i]t stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need

not stop shooting until the threat has ended." *Id*. The Court pointed out that even after the first set of shots were fired, the plaintiff "never abandoned his attempt to flee." *Id*. "Indeed, even after all the shots had been fired, he managed to drive away and to continue driving until he crashed. This would be a different case if [the officers] had initiated a second round of shots after an initial round had clearly incapacitated [the plaintiff] and had ended any threat of continued flight, or if [the plaintiff] had clearly given himself up. But that is not what happened." *Id*.

In this case, as in *Plumhoff*, Plaintiff was engaged in a high-speed chase with several officers pursuing him. Furthermore, by the time Officer Symsek fired shots, Plaintiff had already injured an officer and stolen a vehicle. Even more egregiously, at the time Officer Kelly fired shots, Plaintiff had crashed into a vehicle, forcibly removed a driver, and continued flight. Based on the foregoing, this court concludes that Officers Symsek and Kelly did not violate Plaintiff's Fourth Amendment rights by utilizing deadly force in an effort to stop Plaintiff's flight.[7] Accordingly, the motions for summary judgment filed by both Officer Symsek and Officer Kelly are granted.

## IV.    CONCLUSION

Based on the foregoing, the motions for summary judgment filed by all four defendants will be granted, and this case will be dismissed with prejudice. An appropriate Order follows.

---

[7] In *Plumhoff*, the Supreme Court went on to conclude that "[i]n the alternative, … [the officers] are entitled to qualified immunity for the conduct at issue because they violated no clearly established law." 572 U.S. at 781; *see also Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (holding that officers were entitled to qualified immunity for utilizing deadly force under circumstances where the plaintiff's "behavior threatened the safety of the officers, as well as the public at large"). Similarly, in the instant matter, Officers Symsek and Kelly did not violate clearly established constitutional law in utilizing deadly force to end a police chase where Plaintiff had stolen two vehicles and placed the lives of officers and citizens in danger.

Dated: June 24, 2020            .                    BY THE COURT:

                                                     s/ Cynthia Reed Eddy

                                                     Chief United States Magistrate Judge



cc:    Richard DeSabetino

       *via U.S. mail*


       Counsel of record

       *via electronic filing*